## Case No. 5,173.

### GAINES v. AGNELLY et al.

[1 Woods, 238.] [1]

Circuit Court, D. Louisiana. April Term, 1872.

[1] [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]

E. T. Merrick and J. Q. A. Fellows, for complainant.

Miles Taylor and James McConnell, for defendants.

BRADLEY, Circuit Justice. The complainant [Myra Clark Gaines] excepts to the answer of the defendants in this case for insufficiency. She complains that they have not to the best of their knowledge, information, remembrance and belief answered and set forth the matters required to be answered by the bill, especially those which were called for by the special interrogatories annexed to the bill.

The complainant claims certain lands, mostly in the city of New Orleans, which she alleges were the property of Daniel Clark at the time of his decease in 1813, were by him devised to her by a will dated July 13, 1813, and have since been taken possession of by the defendants. The bill describes the lands, sets out the will and the probate thereof granted in 1855, and calls upon the defendants severally to show the particular portions of property claimed by them. The bill also states several pretenses which it is supposed will be set up by the defendants: as first, title derived under a sale of the land by Richard Relf and Beverly Chew, executors of Daniel Clark under a prior will made in 1811, which was revoked by the will of 1813, and as attorneys of Mary Clark, the mother of Daniel Clark, who was devisee under the will of 1811; and secondly, prescription; but the bill charges that the sale by Relf and Chew was unauthorized and void, and would appear to be so on the face of the proceedings; all which must necessarily have been known to the defendants when they purchased. The defendants are called upon, according to the best of their knowledge, information, remembrance and belief to answer: First. Whether the property described was not a part of the estate of Daniel Clark, of which he died seized? Second. Whether the defendants, severally, claim to be owners of any portion of it? and if so, what portion, and by what right? setting forth metes, bounds and titles. Third. How long the defendants have severally been in possession, and what revenue the property has yielded? Fourth. Whether they have sold any part? if so, what, and for what consideration? These are in substance the interrogatories annexed to the bill, and all the defendants are required to answer them. The bill prays for a discovery of all the matters alleged, that the defendants may be decreed to hold the property as trustees for the complainant, may account for the rents and profits, and for general relief. The answers on the point of Daniel Clark's ownership and seizin of the property described in the bill simply say in each case that the defendant has no knowledge whether said Daniel Clark did or did not hold the legal title thereto, and that therefore he cannot admit, but denies that Clark was seized or lawfully possessed of the same.

The answers then severally set forth and describe by metes and bounds the lands claimed by the defendants, with a statement of the immediate title of the defendants, making the answer and such antecedent acts of title from which the same was derived, as are sufficient to carry back the defendants' title far enough to set up prescription under the laws of Louisiana, with averments on information and belief, that the successive owners purchased in good faith, believing their vendors to be lawful owners of the property; and had continuous, uninterrupted and peaceable possession for the time requisite for the prescription pleaded. The answers further state that proceedings have been instituted in one of the state courts for a revocation of the probate of the will of 1813, under which Mrs. Gaines claims the property; that a decree of revocation has already been made in the court of first instance; and that an appeal from that decree to the supreme court has been taken and argued, and the case is now under the final consideration of that court; and the defendants claim that if the decree of revocation shall be affirmed, it will have the effect to deprive the complainant of all foundation of any right to the land claimed. And they pray that they may have the benefit of such decree if it shall be affirmed. They submit that they are not bound in law to make any other or further answer to any matter or thing contained in the bill.

The answers fail to state, except as it may impliedly appear from the descriptions given by streets and by metes and bounds, whether the lands claimed by the defendants were or were not portions of the land described in the complainant's bill, or whether the defendants have any information or belief on the subject; or whether they have any information or belief on the question, whether the lands claimed by them belonged to Daniel Clark's estate, or to the lands of which he died seized, as set forth in the bill. The defendants were required to answer fully on these points, not merely upon personal knowledge (which at this day they could not be expected to have), but upon their information and belief as well.

The defendants, however, to obviate the force of this objection, refer to the 39th

rule in equity, established by the supreme court of the United States, by which the well known rule of chancery pleading, that if a defendant submits to answer he shall answer fully to all matters of the bill, is abrogated in cases where the defendant might by plea protect himself from such answer and discovery; and in his answer sets forth the matter of such plea as a bar to the merits of the bill. The 39th rule declares that in such answer the defendant shall not be compellable to answer any other matters than he would be compellable to answer and discover upon filing a plea in bar and an answer in support of such plea, touching the matters set forth in the bill, to avoid or repel the bar or defense. The defendants claim that prescription is such a bar, and that having set that up in their answer, they are excused from answering further.

Under the old practice if a plea in bar were filed, and issue taken upon it, and that issue were decided in the complainant's favor, he was entitled to a decree without proving the allegations of his bill. If the same matter were set up in an answer, he was obliged to prove his bill; but in aid of such proof he was entitled to defendant's answer to the whole bill. The new rule, which allows a defendant to set up a bar in his answer, and excuses him from answering further, still leaves the complainant under the burden of proving his bill, and takes from him the benefit of the defendant's answer. But this disadvantage is compensated for, in some degree, by the liability of the defendant to be called as a witness in the cause. Still, the general effect of the new rule being such as I have stated, it seems to be no longer a ground of exception, where the answer sets up a bar to the whole bill, and claims the benefit of it, as of a plea in bar, that it does not fully answer the allegations of the bill. If the bar set up and claimed as such be insufficient, or if it be unsupported by proper averments, or by a proper answer to rebut allegations of the bill repugnant to the bar, the complainant may except for insufficiency, set the cause down on bill and answer only, or file a replication and proceed to proofs, according to the exigency of the case. If the bar set up should be insufficient as such, I think the complainant would be entitled to except, as for want of a full answer, and to avoid answering the exceptions, the defendant, in such case, would require leave of the court before he could amend the bar set up in the answer. If, instead of excepting, the complainant should go to proofs, the burden would be on him to prove his bill, and on the defendant to prove his bar, each being entitled to examine the other as a witness. If, on the other hand, he should set the cause down for hearing on bill and answer only, the answer would have to be taken as true, and the bar therein as proved; and though insufficient as a defense, the complainant

could not have a decree unless the answer admitted those allegations of the bill, on which the prayer for relief was founded. These are the general rules which seem to me to govern the pleadings in equity, as affected by the introduction of this new rule.

From this view of the subject, it is manifest that if the bar set up in the answer is a sufficient defense to the whole relief sought by the bill, it is immaterial whether the defendant answer the allegations of the bill or not. He is not bound to answer them, and the rule no longer applies, that if the defendant does answer at all, even on matters outside of the bar, he must answer fully. If that rule did apply, it would have the effect of converting the answer, in such a case, into a strict plea in bar. Any divergence of statement, any notice of the allegations of the bill outside of the strict line of the defense would be held a waiver of the bar, and would subject the defendant to the old burden of a full answer. I do not think that this would be a sound construction of the rule. If there are any authorities favoring this view, I should have been glad to have had a reference to them. As counsel has not produced any, I feel the greater confidence in the conclusions to which I have come.

The question then is, whether the bar set up is, by the laws of Louisiana, a sufficient defense, and whether it is sufficiently averred. And I do not understand the counsel of the complainant to contend that it is not. It seems to me that the bar is very fully and carefully drawn. It sets out all those circumstances which the laws of Louisiana require to exist as the basis of a prescription. Just title, good faith, the requisite period of possession, and that possession continued peaceably and without interruption. All these circumstances are fully alleged. And the defendant has also traversed the effect of the interruption of prescription resulting from the litigation referred to in the bill. How far the proofs, when taken, will sustain the defense, is another matter, with which the court has at present no concern. Whether, if the complainant shows that the title of the defendants really originated in a void sale and conveyance by the executors of Daniel Clark, it will affect the defense, on the point of good faith, is a question I do not decide. In the cases of Gaines v. Hennen and Gaines v. New Orleans, 24 How. [(65 U. S.) 553], and 6 Wall. [(73 U. S.) 642], the answers admitted that the defendants obtained their title through the sales made by Relf and Chew; and the supreme court held that the illegality of the proceeding was apparent, and constituted a vice in the title, which took from the vendees all pretense of being purchasers or possessors in good faith: and that the interruptions in the prescription prevented its becoming a bar on any other ground. But in this case, the defendants do not set up any claim of title under the executors of Daniel

Clark. They rely on certain titles, which they exhibit as just titles, and which they allege to have been obtained with good faith, and under the honest belief that the author was the real owner. This is, at least, prima facie, sufficient to lay the foundation of the prescription claimed. Any knowledge, information or belief, obtained since the possession commenced, to the effect that the property once belonged to Daniel Clark would not, as I understand the law of Louisiana, impair the efficacy of such possession, as a ground of prescription. The Code expressly says: "It is sufficient, if the possession has commenced in good faith; and if the possession should afterwards be held in bad faith, that shall not prevent the prescription." Article 3448. Therefore, the allegations in the bill, that the property once belonged to Daniel Clark, and that he died seized thereof, are not inconsistent with or repugnant to the plea of prescription. Hence, any present knowledge or belief of the defendants on those points is perfectly immaterial. Their claim by prescription is independent of those facts, and perfectly consistent with them. These allegations, therefore, do not belong to that class of allegations which it is necessary for a defendant to meet and deny in order to support and maintain his plea in bar.

Had the bill charged that the defendants claimed title to the lands in their possession under Relf and Chew, acting as executors of Daniel Clark, it might, perhaps, have been incumbent on the defendants to have cleared their possession of the imputation thus cast upon it. But no such charge is made in the bill. On the contrary, the bill expressly states that the complainant is ignorant of the title and claim of title by which the defendants severally hold; and calls upon the defendants to show their title. The defendants do show title sufficient to lay the foundation of a prescription; and on that defense they take their stand. It seems to me that they are not called upon to answer further. The bar set up is prima facie a good defense; and the exceptions must be overruled. As to the answers which the defendants have brought into court and now ask leave to file, I shall allow them to be filed as of the 6th of May instant, without prejudice to the complainant as to proceeding with proofs in the cause, and bringing it on for hearing.

As to those defendants who are in default and now apply for further time to answer, I shall grant a decree pro confesso against them, subject to this qualification and these terms, to wit: that during the taking of proofs in the cause, they shall be at liberty, severally, to file with the master or examiner and serve on the solicitor of the complainant, a description of the property which they claim, with the chain of title thereto extending back to the period at which the complainant claims it belonged to the estate of Daniel Clark; and to prove, if they can, a legal prescription for the same; subject also to this further qualification, that if, before the proofs are closed, the decree of the Second district court of the parish of Orleans, in the case of Joseph Fuentes v. Myra Clark Gaines [25 La. Ann. 85], revoking the will of Daniel Clark of 1813, be affirmed by the supreme court of Louisiana, the said defendants may have the benefit of said decree for what it may be worth, as if they had pleaded the same. Provided, however, that any further answers of said defendants which may be filed before the first day of June next, may be filed as of the 6th day of May instant, as are mentioned in reference to answers above allowed to be filed as of said day.