## Case No. 12,278.

### SAMPLES v. BANK.

[1 Woods, 523.] [1]

Circuit Court, S. D. Georgia. Nov., 1873.

PLEADING IN EQUITY—SUFFICIENCY OF ANSWER—LIMITATION OF ACTIONS—NOTES OF SUSPENDED BANK—EFFECT OF DECREE.

1. Under the 39th equity rule, when a defendant sets up in his answer the bar of the statute of limitations, and the same is well pleaded, he is thereby excused from further answer to such parts of the bill as are covered by it.

2. When a bank has suspended payment and its bills have ceased to circulate as money, the statutes of limitation apply to them as to other contracts.

3. The sixth section of the act of the legislature of Georgia [Laws Ga. 1869, p. 133] approved March 16, 1869, entitled an "act in relation to the statute of limitations and for other purposes," applies to a suit founded on the notes of a suspended bank.

4. A statute which took effect March 16, 1869, and which declares that all actions upon contracts, etc., which accrued prior to June 1, 1865, shall be brought before January 1, 1870, or both the right and right of action shall be barred, does not impair the obligation of contracts and is not unconstitutional.

5. When a creditor's bill is filed in the state court, under the laws of Georgia, to settle a trust, all creditors notified of the bill according to law are parties and bound by the decree.

In equity. Submitted on exceptions to the sufficiency of the answer.

James S. Hook, for complainant.

W. H. Hull, for defendants.

WOODS, Circuit Judge. The bill is filed against the City Bank, a corporation under the laws of Georgia, domiciled in the city of Augusta. Joseph C. Fargo, Charles Baker and others, citizens of Georgia. It alleges, in substance, that complainant is the holder of certain bills and notes, to the amount of five thousand, four hundred and forty-six dollars, issued by the City Bank under a charter granted by the legislature of the state of Georgia, which the complainant acquired in the course of his business and for a valuable consideration. That the bank, soon after the issue of the notes, suspended specie payment, ceased to do business and failed to redeem or pay its notes. That after such failure the bank distributed among its stockholders a large amount of gold and silver coin to the amount of $70,000, and also certain other large sums as dividends amounting to $30,000. That as late as January, 1866, the bank had on hand a reserved fund of $100,000,

---

[1] [Reported by William P. Mason, Esq.]

[1] [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]

notes discounted to the amount of $50,000, and bonds and stocks amounting to $200,000 real estate amounting to $30,000, bank notes and coin amounting to $75,000, and other amounts worth $20,000. Nevertheless it has refused to pay any portion of its notes so issued except at a large discount, to the fraud and injury of the billholders. That on January 10, 1868, the bank executed a deed of conveyance for the benefit of its creditors, the schedule of which did not contain a full account of the assets of the bank, which constituted a fund for the payment of its debts. Neither the assets above named, nor the large amount of gold and silver coin divided as aforesaid among the stockholders, are mentioned in the deed, and the officers of the bank being stockholders have received a portion of the surplus fund and coin, and have failed to call in and appropriate any portion of the same to the redemption of the outstanding bills. That defendant Fargo received at the time of the distribution of the coin and surplus fund aforesaid, the sum of $1,834 in coin; defendant Charles Baker, $832; defendant Alfred Baker, $5,600, and other named defendants certain sums specified respectively. That the complainant is unable to state what further sums said defendant stockholders or other stockholders received, and asks that said defendants be required to make discovery. The bill further alleges that the funds so improperly distributed would, taken with the assets in the hands of the assignee, be sufficient to pay all the debts of the bank. That after said deed of assignment, complainant demanded of Joseph C. Fargo, the assignee, that he recall from the stockholders all the funds and coin so improperly divided among them, in order to the payment of the debts of said bank; but said Fargo being a stockholder himself, and having received a part of said coin and other assets, and combining with other stockholders, refused and still refuses so to do. That said Joseph C. Fargo and the other stockholders, defendants, combining with one Miles G. Dobbin and others, have obtained from the supreme court of Richmond county, a decree by consent, to distribute the funds of the bank and discharge said assignee, upon his complying with the terms of said decree. That under said decree a final distribution of assets was made to the stockholders at the rate of $4.50 for each share of stock. Said decree was made on March 14, 1870, without notice to complainant, who was not a party to the suit, and was obtained in order to defraud complainant, and other billholders and creditors of the bank, who were not parties to said decree, and complainant had no notice of said decree until after final distribution was made. That said distribution of gold and silver coin to the stockholders, while the outstanding bills were unredeemed, was a fraud upon the billholders of said bank, and that complainant knew nothing of said distribution until after January 1, 1870. That

said deed of assignment, while purporting to be a conveyance of all the assets of said bank, was not in fact so, and did not give a correct schedule of all the assets of the bank, and this fact was first discovered by complainant since the first day of January, 1870. The bill prays for an account of the assets of the bank, owned by it on January 9, 1866, and for the application of the same to the payment of complainant's debt, for an account of the amount due complainant, and that each of defendants may be required to account for the coin and surplus funds received by him from the assets of said bank, and that they may be decreed to pay the complainant, on his said debt, what shall appear to be just and due and owing to him.

To this bill defendants, under the 39th equity rule, which provides that "the defendant shall be entitled in all cases, by answer, to insist upon all matters of defense in bar of or to the merits of the bill of which he may be entitled to avail himself by a plea in bar," have filed an answer in which they set up in bar of the complainant's claim, the statute of limitation passed by the legislature of Georgia, approved March 16, 1869, entitled "an act in relation to the statute of limitations, and for other purposes" (Laws Ga. 1869, p. 133), and also the general statute of limitations. The complainant has excepted to the answer as evasive, imperfect and insufficient in refusing to answer a part of the interrogatories and in not fully answering others. These exceptions present the question, whether the statute of limitations, pleaded by defendants, is a bar to the relief claimed; for if it is a bar, it excuses the defendants from further answer.

That part of the answer which sets up the limitation is in these words: "To all the charges in said bill, touching dividends of any kind declared by said City Bank, or the disposal of its assets by said bank, save the said assignment, defendants decline to answer, because they say that none of said dividends were declared, nor any payments or transfer of money or assets, made by said bank to its stockholders, at any time after the 31st day of May, 1865. And all the bills held by complainant were issued before said last named date, and none since that time, and that at said last named date, and continuously since that time, said bank has been notoriously insolvent, and had and ever since has ceased to transact business or to keep any banking office or place of business, and all said bills have since that time ceased to circulate as money. Wherefore, defendants claim the benefit of the act of limitation aforesaid."

The provisions of the statute on which this answer is founded, are as follows:

"Sec. 3. And be it further enacted, that all actions on bonds or other instruments under seal, and all suits for the enforcement of rights accruing to individuals or corporations under the statutes or acts of incorporation,

or in any way by operation of law which accrued prior to June 1, 1865, not now barred, shall be brought by January 1, 1870, or the right of the party plaintiff or claimant and all right of action for its enforcement shall be forever barred."

"Sec. 6. And be it further enacted, that all other actions upon contracts express or implied, or upon any debt or liability whatsoever, due the public, or a corporation or a private individual or individuals, which accrued prior to the first day of June, 1865, and are not now barred, shall be brought by January 1, 1870, or both the right and the right of action to enforce it shall be forever barred. All limitations hereinbefore expressed shall apply as well to courts of equity as courts of law, and the limitations shall take effect in all cases mentioned in this act, whether the right of action had actually accrued prior to the 1st of June, 1865, or was then only inchoate and imperfect if the contract or liability was then in existence."

The terms of these sections are very broad, but it is claimed by the complainant that they do not apply to bank bills. A recent decision of the supreme court of Georgia, to which our attention has been called, is adverse to this position. In Kimbro v. Bank of Fulton [49 Ga. 419], of which only the head note is furnished, and which is not yet reported in full, it was held as follows: "The general rule is, that statutes of limitation do not apply to bank bills, because they are, by the consent of mankind and course of business, considered as money, and that their date is no evidence of the time when they were issued. If bills have ceased to circulate as currency, and have ceased to be taken in and reissued by the banks, they no longer have that distinctive character from other contracts, which excepts them from the operation of the statute of limitations. If the bills of the Bank of Fulton had thus lost their distinctive character prior to the 1st of June, 1865, they come within the provisions of the act of March 16, 1869, entitled 'An act in relation to the statute of limitations, and for other purposes.'"

The averments of the defendant's plea bring this case within the rule thus laid down. In Leffingwell v. Warren, 2 Black [67 U. S.] 603, it was held by the United States supreme court that the construction given to a statute of limitations by the supreme court of a state will be followed by the federal courts. We are therefore constrained to hold upon this point with the decision of the supreme court of Georgia. And we may add, that decision has our full concurrence.

It is insisted further, by the complainant, that the bill charges fraud, and the statute does not apply to frauds. Under the general statute of limitations of this state (Irwin's Code, § 2880), it is provided that if the defendant, or those under whom he claims, has been guilty of fraud by which the plaintiff had been de-

barred or deterred from his action, the period of limitation shall run only from the time of the discovery of the fraud. There is no such provision in the act under consideration, and the most the complainant can fairly claim is that the general provision applies. Conceding, as we do, this to be the fact, the complainant fails entirely to bring his case within the exception by the averments of his bill. There is no charge that by the fraud of defendants he has been debarred or deterred from his action. We think that, by the 6th section of the act, an action on the bills is barred against the bank itself. The terms of this section are as broad as language can make them: "All actions upon contracts, express or implied, or upon any debt or liability whatsoever, due the public, or a corporation or a private individual or individuals, which accrued prior to June 1, 1865, and are not now barred, shall be brought by the 1st of January, 1870, or both the right and the right of action to enforce it shall be forever barred." This language leaves no loop hole of escape. A fortiori, if the action on its bills against the bank itself is barred, an action against the stockholders on the bills, based on the averments made in the bill of complaint, must also be barred.

The complainant assails the statute for unconstitutionality, and criticises its provisions. We think that the details of a statute of limitations are wholly within the discretion of the legislative power, with a single limitation only, that no such act can impair the obligation of contracts. The act under consideration provides, that upon all contracts or liabilities which existed prior to June 1, 1865, an action should be brought within nine months and fifteen days from the passage of the act, or be forever barred. Does this impair the obligation of contracts, or is it only a change of the remedy? If the latter, it is not forbidden by the constitution. It is well established that the legislature may shorten the time for the running of the statute of limitations without impairing the obligation of the contract; that such legislation affects the remedy only. The only restraint upon this power is, that reasonable time must be allowed, after the passage of the law, to allow the bringing of actions. A limitation, so short as to practically cut off all actions, would affect the contract as well as the remedy, and be void. Here is a statute which applies to contracts and liabilities which had existed nearly four years, and which allowed over nine months in which to bring suit. This appeared to the legislature a reasonable time, and, in regard to the class of contracts to which it applies, it seems reasonable to us. It may be fairly held to change the remedy merely, and not to impair the obligation of the contract.

We are of opinion, then, that the statute pleaded is constitutional; that it bars the claim of complainant, and that the answer setting it up in response to certain parts of

the bill of complaint, excuses the defendants from further answer to those portions of the bill.

To that part of the bill which alleges an assignment of the assets of the bank, and calls upon the assignee to account for the trust funds, the defendants set up in their answer the decree of the superior court of Richmond county, which is also mentioned in the bill, distributing the funds of the bank and discharging the assignee. There are no sufficient averments of fraud or collusion, in the bill, to render the decree void; and, as it was a creditor's bill to settle a trust, all creditors are parties, if they were brought in by publication, according to the laws of Georgia. Story, Eq. Pl. §§ 103, 106.

There is no averment that complainants were not notified, according to law, of the pendency of the bill, nor is a copy of the record attached to the bill. Without other and further averments, we must hold the decree binding on complainants. The setting up of the decree in the answer excuses defendants from further answer to that part of the bill to which the averments relative to the decree apply.

The answer appears to us to be a complete defense to the case made by the bill, and that it is in all respects sufficient. The exceptions must, therefore, be overruled.