EXCELSIOR WOODEN PIPE CO. v. CITY OF SEATTLE.

(Circuit Court of Appeals, Ninth Circuit. May 26, 1902.)

No. 767.

1. PATENTS—SUIT FOR INFRINGEMENT—SEVERANCE FOR PURPOSE OF APPEAL.
    A licensee under a patent, having the right to join the patentee as a co-complainant in a suit for infringement with or without his consent, is entitled to prosecute an appeal from an adverse decree in such a suit, although the patentee declines to join in such appeal, by having him summoned, and his refusal entered of record.

2. EQUITY—PRAYER FOR DISCOVERY—SUFFICIENCY OF BILL.
    A prayer for discovery in a bill may be disregarded where the bill propounds no interrogatories, and answer under oath is expressly waived.

3. PATENTS—LICENSEE—RIGHT TO SUE FOR INFRINGEMENT.
    A grant by a patentee of the exclusive right to manufacture and sell the patented article within a specified territory is a mere license, which conveys no title to the patent within such territory, and no exclusive right of use therein which entitles the grantee to sue for infringement one who uses the article, manufactured by others outside of the territory.

Appeal from the Circuit Court of the United States for the Northern Division of the District of Washington.

Wm. F. Booth, N. A. Acker, W. W. Wilshire, and A. H. Kenaga, for appellant.

W. E. Humphrey, A. R. Titlow, and Bogle & Richardson, for appellee.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

ROSS, Circuit Judge. This was a suit in equity, from the averments of the amended bill, in which it appears that one Charles P. Allen was the inventor of a hooped pipe composed of wooden staves, the cross-joints being interlocked by concealed metallic tongues of novel construction and arrangement, the hoop of the pipe being composed of a novel strap bolt, coupling-shoe, and means for engaging them, for which invention letters patent were duly issued on the 22d day of March, 1887, granting and securing to Allen, his heirs and assigns, for the full term of 17 years from that date, the exclusive right to make, use, and vend the said invention throughout the United States and its territories; that thereafter, and prior to the commission of the acts complained of, Allen granted to the Excelsior Redwood Company, a California corporation, its successors and assigns, the exclusive right to manufacture and sell the patented article during the life of the patent within certain described territory, including the state of Washington, which right was conveyed, also prior to the commission of the acts complained of, by the Excelsior Redwood Company to the complainant the Excelsior Wooden Pipe

Company, a California corporation, which exclusive right to manufacture and sell the patented article within the state of Washington has ever since been held by it. The bill alleges, among other things, that the complainant the Excelsior Wooden Pipe Company, ever since acquiring the right mentioned, has been, and still is, engaged in the manufacture and sale of the patented pipe, and has invested large sums of money therein, and has derived large profits therefrom; that the pipe so made and sold by it has been distributed in various places throughout the territory covered by its exclusive license; that it has been put in actual use and used, and has become well known and sought and called for by intending purchasers, and that the complainant the Excelsior Wooden Pipe Company has become well known as the exclusive licensee under the patent, and that "all persons have generally acquiesced in, admitted, and recognized the validity of said letters patent, and have respected the rights of your orators therein, and refrained, in general, from infringing the same." The bill further alleges that, in compliance with section 4900 of the Revised Statutes, the complainants "have always marked and caused to be marked all of the said patented wooden pipe manufactured and sold by them with the word 'Patented,' together with the day and year the said patent was granted, to wit, March 22, 1887, thereby giving notice to the public at large that the wooden pipe was covered by the said letters patent." The bill further alleges that prior to the filing thereof, and within one year then last past, and after the acquirement by the complainant the Excelsior Wooden Pipe Company of its exclusive license, the respondent city, with full knowledge of the existence of such exclusive license, and entirely disregarding the same, and without right so to do, did, in the state of Washington, make and cause to be made a large amount of wooden pipe containing and embodying the said patented invention, and has used and continues to use the same, thereby infringing the said letters patent and the rights secured to the complainant the Excelsior Wooden Pipe Company by its exclusive license. It is further alleged in the amended bill that the defendant city is, without license or right, still making and causing to be made, and still using the said pipe so made and caused to be made, in the said state of Washington, and threatens to continue to do so, and will continue the alleged unlawful acts unless restrained by the court; that the damages thereby suffered by the complainants exceed $50,000, but that they are unable to allege the damages with any greater certainty "without a discovery from said respondent as to the length and diameter of the said infringing wooden pipe, together with the amount of material, both wood and metal, used in its construction, and an accounting based upon said discovery"; that the respondent has realized upwards of $50,000 by reason of the alleged infringement, "but the exact amount of which is likewise unknown to your orators, and they cannot calculate or allege the same without a discovery and accounting, as aforesaid, from said respondent." Although a discovery is prayed for, an answer under oath is expressly waived. An injunction restraining the alleged infringement is also prayed for, as well as an accounting, with a decree for such profits as the respondent may be shown to

have realized by the infringement, and such damages as the complainants may be shown to have sustained.

To the amended bill the respondent city interposed two pleas, by the first of which the city set up that on or about the 19th day of April, 1899, it entered into a written contract with the Pacific Bridge Company, a California corporation, for the construction and completion of certain additions to the then existing water system by which it supplied the inhabitants of the city with pure water, a copy of which contract was annexed to the plea, and which showed that the bridge company was an independent contractor. The plea alleged that the bridge company, as such contractor, proceeded, in accordance with the terms of the contract, to construct and complete the additions to the water system, in the course of which work it made and caused to be made and used certain wooden stave pipe for carrying the water in certain parts of the system. By its plea the city denied that it had ever at any time made any wooden pipe of the pattern described in the amended bill, or containing or embodying any of the devices or inventions covered by the patent therein alleged, or caused the same to be made, otherwise than by entering into the contract with the bridge company, and averred that, if the pipe used by the bridge company in the construction and completion of the work contracted for infringed the letters patent, such infringement, if committed at all, was committed solely by the bridge company. The plea further set up that the complainant Allen licensed the bridge company to make and use wooden pipe in the work so contracted for by it under said letters patent, and expressly consented to such manufacture and use; and that the complainant Allen, on the 16th day of March, 1901, "in consideration of payments made to said contractor, executed to this respondent a full and complete release from and waiver of any and all claims he might otherwise have against this respondent for or on account of its acceptance of said additions to its water system so constructed by said Pacific Bridge Company, and its continued use of said additions and of the pipe used by said contractor in constructing said additions to its water system." The second plea of the respondent city, in addition to the matters averred in its first plea, alleged that it had no purpose or intention to manufacture or cause to be manufactured water pipe containing or embodying the devices or inventions covered by the said letters patent, or to participate in any way in any future infringement; and denied that, unless restrained by the court, it would continue to make or cause to be made any such infringing wooden pipe. The pleas were supported by a verified answer filed by the respondent city, which, among other things, set up the same contract with the Pacific Bridge Company alleged in the two pleas, and averred that the bridge company procured from the patentee, Allen, outside of and beyond the territory covered by the license owned by the complainant the Excelsior Wooden Pipe Company, such parts of the wooden stave pipe used by it in constructing the said addition to the respondent city's water system as contained and embodied the invention covered by the said letters patent, and that, having so lawfully procured such parts so patented, the said bridge company did

use the same in the construction of the addition to the respondent city's water plant contracted for by it. The answer denied that the city had ever made any such wooden pipe as embodied any part of the said invention, or that it had ever caused any such wooden pipe to be made, but admitted that it did execute the aforesaid contract with the said bridge company, and averred that that contract did not require or obligate the bridge company to use the invention claimed by the complainants in any part of the work so contracted for and performed in and upon the respondent city's water system. By its answer the respondent city alleged that after the construction and completion of the addition contracted for by the bridge company it used the same as a part of its municipal water plant, and averred that the complainant Allen, before the work contracted for and completed by the bridge company was turned over to the city, authorized and licensed the respondent city to use the pipe embodying his invention, and released it from any claim, penalty, or damage it might otherwise have incurred for or on account of the use of the pipe in question. The answer of the city denied that it was making or causing to be made any wooden pipe embodying or containing the aforesaid invention, either in the state of Washington or elsewhere, and denied that it threatened or intended to make or cause to be made any such wooden pipe in the future, or that it has heretofore threatened or intended to make any such wooden pipe, or cause the same to be made, and denied that it had at any time threatened or intended to use any wooden pipe embodying the said invention, save and except the pipe contained in and forming a part of the aforesaid addition to its said water system constructed by the said Pacific Bridge Company, and denied that it would use any of such wooden pipe except that above mentioned unless restrained by the court.

The complainants, failing to take issue upon any matter contained in the pleas, caused the same to be set down for argument, which was had, after which the court below sustained the pleas, with leave to the complainants to take issue upon the facts set forth therein. The complainants declined to do so, and the court, holding the pleas good and sufficient as a bar to the complainants' alleged cause of action, entered judgment dismissing the bill, with costs to the respondent. Thereupon the complainant the Excelsior Wooden Pipe Company desiring to appeal from such judgment, and the complainant Allen being unwilling to do so, the former notified the latter in writing to appear at a time stated and join in the appeal, in response to which the complainant Allen appeared in the court below, and filed therein his declination; and thereupon, on the petition of the complainant the Excelsior Wooden Pipe Company, the court below allowed its appeal to this court from the judgment given below; and here a motion is made by the respondent city for the dismissal of the appeal on the ground that the appellant, the Excelsior Wooden Pipe Company, has no such title to or interest in the subject-matter of the litigation as authorizes it to prosecute an appeal in its own name.

It is true that a licensee cannot prosecute a suit in equity in his own name against a third party for an infringement, but must at least join the patentee as co-complainant, who may be so joined whether willing

or unwilling. Birdsell v. Shaliol, 112 U. S. 485, 487, 5 Sup. Ct. 244, 28 L. Ed. 768; Littlefield v. Perry, 21 Wall. 205, 223, 22 L. Ed. 577; Paper Bag Machine Cases, 105 U. S. 766, 776, 26 L. Ed. 959; Brush Electric Co. v. California Electric Light Co., 3 C. C. A. 368, 52 Fed. 945. And as a patentee may be joined as a co-complainant against his consent originally, no good reason is perceived why he may not be so retained for the protection of the rights of his licensee, after judgment once rendered, and the cause remanded for further proceedings. The patentee may be content with a decree against him; but when his co-complainant is not, and has the right of appeal, the doctrine of summons and severance may be invoked, and upon the refusal of the patentee to join in the appeal after being duly notified to do so the appeal of his licensee may be allowed upon the entry of such refusal of record, the judgment remaining conclusive as to the party refusing. Masterson v. Herndon, 10 Wall. 416, 19 L. Ed. 953; Fost. Fed. Prac. (3d Ed.) § 505. The motion to dismiss the appeal is denied.

Upon the merits we are of the opinion that the judgment should be affirmed. The discovery feature of the bill may be disregarded— First, because an answer under oath is expressly waived in the bill; and, secondly, because the bill propounds no interrogatories. Huntington v. Saunders, 120 U. S. 78, 7 Sup. Ct. 356, 30 L. Ed. 580; 6 Enc. Pl. & Prac. 732. There is no doubt that when a city infringes a right granted and secured by letters patent it is liable for the wrong. But was there any infringement in this case by the city of Seattle? In so far as the patentee is concerned, the city clearly had his consent to the use of the patented pipe. Now, what were the rights of the complainant the Excelsior Wooden Pipe Company? It never acquired the entire rights of the patentee to the invention in any territory. What it did acquire and own at the time of the commission of the acts complained of was the right to manufacture and sell the patented pipe within, among other territory, the state of Washington, and, as a necessary incident thereof, the right to use and cause to be used the pipe so manufactured and sold by it in the limited territory stipulated for. But it was not granted the right to use any of the patented pipe made by others, nor did its exclusive license to manufacture and sell the patented article within the state of Washington, with the incidental right to use and cause to be used pipe so manufactured and sold by it, preclude the use of the patented article within the state of Washington that was made by others outside of the territory. "The grant of an exclusive right," said the supreme court in Waterman v. Mackenzie, 138 U. S. 256, 11 Sup. Ct. 334, 34 L. Ed. 923, "under the patent within a certain district, which does not include the right to make, and the right to use, and the right to sell, is not a grant of a title in the whole patent right within the district, and is therefore only a license. Such, for instance, is a grant of 'the full and exclusive right to make and vend' within a certain district, reserving to the grantor the right to make within the district, to be sold outside of it. Gayler v. Wilder, 10 How. 477, 13 L. Ed. 504. So is a grant of 'the exclusive right to make and use,' but not to sell, patented machines within a certain district. Mitchell v. Hawley, 16 Wall. 544, 21 L. Ed. 322. So is an

instrument granting 'the sole right and privilege of manufacturing and selling' patented articles, and not expressly authorizing their use, because, though this might carry by implication the right to use articles made under the patent by the licensee, it certainly would not authorize him to use such articles made by others. Hayward v. Andrews, 106 U. S. 672, 1 Sup. Ct. 544, 27 L. Ed. 271. See, also, Oliver v. Chemical Works, 109 U. S. 75, 3 Sup. Ct. 61, 27 L. Ed. 862." The implied right to use and cause to be used articles made under the patent by the licensee in this case is limited to articles so made. It does not carry the monopoly of the entire right of user, and of the right to grant to others the right of user, which vested in the patentee under the letters patent. If so, the grant of the right to make and to sell would carry the entire monopoly, which, it is well settled, is not the case. "Every patent," said the supreme court in Waterman v. Mackenzie, supra, "issued under the laws of the United States for an invention or discovery, contains 'a grant to the patentee, his heirs and assigns, for the term of seventeen years, of the exclusive right to make, use, and vend the invention or discovery throughout the United States and the territories thereof.' Rev. St. § 4884. The monopoly thus granted is one entire thing, and cannot be divided into parts, except as authorized by those laws. The patentee or his assigns may, by instrument in writing, assign, grant, and convey either—First, the whole patent, comprising the exclusive right to make, use, and vend the invention throughout the United States; or, second, an undivided part or share of that exclusive right; or, third, the exclusive right under the patent within and throughout a specified part of the United States. Id. § 4898. A transfer of either of these three kinds of interests is an assignment, properly speaking, and vests in the assignee a title in so much of the patent itself, with a right to sue infringers; in the second case, jointly with the assignor; in the first and third cases, in the name of the assignee alone. Any assignment or transfer short of one of these is a mere license, giving the licensee no title in the patent, and no right to sue at law in his own name for an infringement." As the case is presented, it appears that the respondent city never made or sold any of the patented pipe, and that its acts were confined solely to the use of such of the patented article as was made or procured by the Pacific Bridge Company, and by it placed in the city's water system under a contract containing no provisions in respect to such patented article. As the Excelsior Wooden Pipe Company's license did not cover or prohibit the use of pipe so made and placed, it has no cause of complaint against the appellee.

The judgment is affirmed.